```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

PAETEC COMMUNICATIONS, INC.,

  Plaintiff,

  v.

CELLCO PARTNERSHIP,

  Defendant.

CIVIL ACTION NO. 07-821 (MLC)

**MEMORANDUM OPINION**

  **THE COURT** having ordered the parties to show cause why the Court should not (1) direct them to proceed with this dispute before the Federal Communications Commission ("FCC") and the appropriate local public utilities commissions ("PUCs"), and (2) stay and administratively terminate the action, with leave to reopen for good cause shown, pending determinations by the FCC and the appropriate PUCs (dkt. entry no. 15, Order to Show Cause); and the Court (1) reviewing the papers filed in support of and in opposition to the order to show cause (dkt. entry nos. 16-18), and (2) intending to decide the order to show cause without oral hearing and on the papers, see Fed.R.Civ.P. 78; and

  **IT APPEARING**, in this dispute concerning telecommunications services, that (1) the plaintiff — PaeTec Communications, Inc. ("PCI") — is a local exchange carrier, and (2) the defendant — Cellco Partnership ("CCP") — provides commercial mobile radio service, or mobile telephone service (dkt. entry no. 1, Compl., at 4); and PCI bringing this action to recover unpaid charges for access services it provided to CCP for calls between major

trading areas, pursuant to (1) "Tariff F.C.C. No. 3", which was "filed pursuant to the Communications Act of 1934", (2) "tariffs duly filed with the appropriate state commissions and/or other regulatory bodies" in the District of Columbia and various states, and (3) the parties' "Interconnection Agreement" (id. at 3, 6-9); and CCP having initially responded that the tariffs and interconnection agreement neither apply here nor obligate it to pay (dkt. entry no. 8, CCP Mem., at 6-10, 17-19; see id. at 12 (arguing transport and termination of mobile-telephone traffic between major trading areas not clearly identified in tariffs at issue, and thus PCI entitled to no access-charge payment)); and

**IT APPEARING** that disputes between telecommunications companies concerning tariffs, rates, or charges are within the primary jurisdiction of the FCC and relevant PUCs, see Combined Cos. v. AT&T Corp., No. 95-908, 2006 WL 1540917, at *7 (D.N.J. June 1, 2006) (denying motion to vacate stay pending FCC determination because FCC was proper forum to address disputed tariff provision, and noting delay in resolving dispute caused by plaintiffs' own failure to proceed before FCC initially), Union Tel. Co. v. Qwest Corp., No. 02-209, 2004 WL 4960780, at *17 (D. Wyo. May 11, 2004) (staying action "to permit the parties to obtain the appropriate relief before the appropriate state agencies", as "[t]he interpretation of a tariff to determine its applicability to particular types of telecommunications traffic

for purposes of recovering access charges involves expertise beyond the conventional experience of [a district court]"), aff'd, No. 06-8012, 2007 WL 2153231 (10th Cir. July 27, 2007); and thus it appearing that the issues here were within the primary jurisdiction of, and should be addressed by, the FCC and the appropriate PUCs, see MCI Telecommc'ns Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1103-06 (3d Cir. 1995) (reversing district court order, and directing dispute over phone service be addressed by a PUC first); and it appearing that the Court may direct the parties to proceed before the FCC or a PUC, even though the Court otherwise has jurisdiction, see MCI Worldcom Commc'ns v. Commc'ns Network Int'l, No. 01-762, 2001 WL 1002405, at *4-*5 (E.D. Pa. Aug. 28, 2001) (directing parties to proceed before FCC); and it appearing further that when a district court directs the parties to proceed before the FCC or a PUC, the action should be stayed pending an agency determination, see Teleconcepts, 71 F.3d at 1106; and

**CCP** having initially acknowledged that the Court may order the parties to proceed before the appropriate PUCs (CCP Mem., at 19 n.19); but PCI having initially responded that (1) the Court is competent to address the issues here, and (2) CCP failed to address whether any part of the dispute should be addressed by the FCC (dkt. entry no. 11, PCI Br., at 25-27); but it appearing that the issues presented in the parties' dispute should be

initially addressed by the FCC and PUCs as appropriate, see, e.g., WWC License v. Boyle, 459 F.3d 880, 885-86 (8th Cir. 2006) (addressing dispute between local carrier and commercial mobile radio service provider concerning calls within major trading areas, which — notably – was addressed by a PUC first), Atlas Tel. Co. v. Okla. Corp. Comm'n, 400 F.3d 1256, 1259-61 (10th Cir. 2005) (same), Alma Commc'ns Co. v. Mo. Pub. Serv. Comm'n, No. 05-4358, 2006 WL 1382348, at *1-*2 (W.D. Mo. May 19, 2006) (same), aff'd, No. 06-2401, 2007 WL 1661962 (8th Cir. June 11, 2007), see also Voicestream PCS II Corp. v. BPS Tel. Co., No. 05-4037, 2005 WL 2065249, at *1-*3 (W.D. Mo. Aug. 24, 2005) (addressing dispute between local carrier and commercial mobile radio service provider concerning calls terminating on local carrier's network, which — notably – was addressed by FCC and a PUC first); and

**CCP**, in response to the Court's order to show cause, now arguing that PCI:

> has raised issues that implicate federal telecommunications policies that are currently under consideration by the FCC, [and thus] it is both efficient and appropriate to have the FCC lead the way. The [FCC's] determinations on the issues referred by the Court are likely to guide, and perhaps even control, the state commissions' interpretations of [PCI's] state tariffs

(dkt. entry no. 17, CCP Br. in Resp., at 3); and CCP identifying the following issues that could be determined by the FCC now:

> 1.   Whether the retroactive use of a traffic identification and billing methodology to collect

4

tariffed access charges when the tariff does not address such traffic at all constitutes a just and reasonable practice under 47 U.S.C. § 201(b);

2. Whether the billing of tariffed access charges many months and even years after they were allegedly incurred, contrary to the billing provisions of the tariff itself, constitutes a just and reasonable practice under 47 U.S.C. § 201(b);

3. Whether the use of JIP[1] codes is a technologically reasonable means of identifying interMTA traffic[2] for purposes of assessing access charges;

4. Whether the use of JIP codes would obviate the need for wireless and wireline carriers to negotiate interMTA/intraMTA traffic factors for purposes of determining compensation;

5. Whether the use of JIP codes to identify interMTA wireless traffic for purposes of applying tariffed access charges over the past five years constitutes a just and reasonable practice under 47 U.S.C. § 201(b);

6. Whether the use of JIP codes to bill [CCP] constitutes an unreasonably discriminatory practice under 47 U.S.C. § 202

(id. at 6-7); and it appearing that PCI's protests to CCP's arguments only serve to further illustrate the need for the FCC's expertise in addressing the dispute here (see dkt. entry no. 18, PCI Reply, at 6-9); and it further appearing that PCI's argument that none of its claims would require referral to a PUC (see dkt. entry no. 16, PCI Br. in Resp., at 15-16) is belied by its own

---

[1] JIP means "jurisdictional information parameter". (Dkt. entry no. 16, PCI Br. in Resp., at 2; CCP Br. in Resp., at 1.)

[2] "InterMTA traffic" refers to wireless calls that originate with a caller in one major trading area and end with the called party in another major trading area. (Compl., at 4.)

complaint (see Compl., at 8 (noting claims involving "intrastate interMTA access services" and "charges for these services are referenced in [PCI] tariffs duly filed with the appropriate state commissions and/other regulatory bodies")); and it further appearing that the parties may be directed to proceed before the appropriate PUCs because "interpretation and enforcement actions that arise after a state commission has approved an interconnection agreement must be litigated in the first instance before the relevant state commission", and a "party may then proceed to federal court to seek review of the commission's decision or move on to the appropriate trial court to seek damages for a breach, if the commission finds one", Core Commc'ns v. Verizon Pa., No. 06-2419, 2007 WL 2059093, at *1 & *10 (3d Cir. July 18, 2007) (emphasis added) (affirming part of judgment directing parties to proceed before PUC first); and

  **THE COURT** thus intending to (1) grant the order to show cause, (2) direct PCI to institute proceedings before the FCC and the appropriate PUCs, and (3) stay and administratively terminate this action until all of the issues raised in the complaint have at least been raised before either the FCC or any PUCs; but the Court acknowledging PCI's argument that the FCC may refuse to address issues raised here (see PCI Br. in Resp., at 1 & 6); and the Court suggesting that PCI may institute either (1) simultaneous proceedings before the FCC or any PUCs as

6

appropriate, or (2) a proceeding before the FCC raising all of the issues raised in the complaint first, and then proceedings before any PUCs as to any issues that the FCC refuses to determine; and

**THE COURT** emphasizing that an order administratively terminating an action is not the equivalent of a dismissal of a complaint, and is issued pursuant to the Court's inherent power to control the docket and in the interests of judicial economy, see Delgrosso v. Spang & Co., 903 F.2d 234, 236 (3d Cir. 1990) (stating administrative termination not final determination, as it "permits reinstatement and contemplates the possibility of future proceedings", and "does not purport to end litigation on the merits"); see also Core Commc'ns, 2007 WL 2059093, at *3 & *10 (reversing part of judgment dismissing — rather than staying and administratively terminating — claims upon directing parties to proceed before PUC); and for good cause appearing, the Court will issue an appropriate order.

                                                s/ Mary L. Cooper  
                                                **MARY L. COOPER**  
                                                United States District Judge